UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TRACY SILVA,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br><br>    Defendant. | Case No. 18-cv-07690-RMI<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 24 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her applications for social security disability benefits under Title II and Title XVI of the Social Security Act. On July 10, 2014, Plaintiff filed her applications for disability benefits alleging an onset date of May 21, 2013. *See Administrative Record*[1] ("*AR*") at 1089. The ALJ denied the applications on July 21, 2017. *Id.* at 1099. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council on June 19, 2018 (*id*. at 21), and thus, the ALJ's decision became the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 9 & 10), and both parties have moved for summary judgment (dkts. 23 & 24). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

//

---

[1] The *AR*, which is independently paginated, has been filed in several parts as several attachments to Docket Entry #17, along with a Supplemental Transcript at Docket Entry #19. *See* (dkts. 17-1 through 17-17, and 19-1 through 19-3).

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF THE RELEVANT EVIDENCE

Plaintiff's applications for social security benefits alleged disability based on both physical and mental impairments. The physical impairments mainly stem from a motor vehicle accident in 2009, in which Plaintiff suffered injury to her neck, back, and right calf. *See AR* 538. In 2011, Plaintiff began seeking treatment for her injuries at the Aurora Heath Center, and was treated by Dr. Gatto, among others. *Id*. at 520-83, 675-81. She also sought treatment from a neurological wellness clinic, with Drs. Fitzgerald and Jochims (*id*. at 859-881), and several chiropractors (*see id*. at 666-76, 859-81, 915-18). Throughout her treatment, Plaintiff complained of back and neck pain, headaches, blurred vision, right foot weakness, spasms, muscle contractions, and other ailments, for which she was prescribed Lyrica, Metaxalone, and Skelaxin among other medications, and physical therapy. *See generally, id*. at 520-83. In 2016, Plaintiff began seeking treatment from the Contra Costa Regional Medical Center, where she received treatment by Dr. Pepper and Dr. Lo. *Id*. 936-1008. Dr. Lo referred Plaintiff for surgery for a ventral hernia, but Plaintiff deferred. *Id*. at 1038. In 2018, Dr. Schrot diagnosed Plaintiff with osteoarthritis of the spine with radiculopathy, with no significant facet disease, and recommended a cervical

discectomy and total disc arthroplasty at C5-C6 anterior. *Id*. at 29-30.

As to Plaintiff's mental impairments, Plaintiff was referred for a psychological evaluation by a Wisconsin county circuit court in 2013 as part of a child custody case. *Id*. at 452-58. In that report, the doctors found that Plaintiff suffered from mild depression and anxiety and tended to experience somatic symptoms that "are likely to become worse when she is under stress." *Id*. Similarly, Dr. Pepper noted Plaintiff's hypervigilance. *Id*. at 945. In May of 2015, Plaintiff was examined by agency consultant Dr. Cross, who diagnosed Plaintiff with a generalized anxiety disorder. *Id*. at 929. In 2016, because of Plaintiff's ongoing anxiety, Dr. Pepper referred Plaintiff for a psychological evaluation with Dr. Vellerman. *Id*. at 1020. Following the examination, Dr. Vellerman assessed that "[t]hough the GAD-7 indicated minimal sxs of anxiety; these sxs in addition to possible physical limitations caused by MVA have significantly impacted occupational and social functioning." *Id*.

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[2] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)) and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *AR* 1089-99. At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be

---

[2] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *AR* 1092.

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: mild cervical degenerative changes and torticollis. *AR* 1092.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed, and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *AR* 1093. Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with several exertional, postural, and environmental limitations. *Id*. at 1093-94.

At Step Four, the ALJ determined that Plaintiff was unable to perform any past relevant work. *Id*. at 1097. Lastly, at Step Five, the ALJ concluded that based on the RFC, there were jobs in the national economy that Plaintiff could perform during the relevant time period, such as a phlebotomist and pharmacy technician. *Id*. at 1098. Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from May 21, 2013, through the date of the decision. *Id* at 1099.

## ISSUESS PRESENTED

Plaintiff presents two issues for review, claiming that the ALJ erred in failing to properly address the treating doctor's medical evidence and Plaintiff's mental impairment. *See* Pl.'s Mot. (dkt. 23) at 8-11.

4

**DISCUSSION**

In this first issue, Plaintiff argues that the ALJ erred in failing to address the opinion of treating physician, Dr. Gatto. Pl.'s Mot. (dkt. 23) at 8-9. Attached to Plaintiff's Motion is a letter from Dr. Gatto written in 2013 (Exh. A (dkt. 23-1)), which Plaintiff asserts "was not placed in the record by the Commissioner" (Pl.'s Mot. (dkt. 23) at 5). Plaintiff points to Dr. Gatto's treatment of Plaintiff from 2011, and to his statement in the letter that Plaintiff's "impairment is permanent." *Id*. at 9. Defendant counters this by arguing that the ALJ did consider Dr. Gatto's treatment of Plaintiff and that as to the letter, Plaintiff has improperly sought to submit new evidence without a motion, and without an assertion as to whether the letter is material and whether good cause exists as to why the letter was not submitted to the ALJ. Def.'s Mot. (dkt. 24) at 10; *see Wainwright v. Sec'y of Health & Human Servs.*, 939 F.2d 680, 682 (9th Cir. 1991) ("Remand for consideration of new evidence is appropriate if a claimant presents evidence that is material to determining disability, and there is good cause for the failure to produce the evidence earlier."). Plaintiff does not respond to Defendant's arguments that the letter is improperly before the court, instead, Plaintiff reiterates her augment that the ALJ failed to consider Dr. Grotto's opinion and failed to give any rationale for rejecting it. *See* Pl.'s Reply (dkt. 25) at 3-6.

Regarding whether the letter is properly before the court, the issue is moot. The letter, or at least the substance therein, exists within the record. *See AR* 543-44. In October of 2013, Plaintiff visited Dr. Gatto, and requested a letter "that she can present to her attorney" regarding her C1-C2 instability. *Id*. at 544. Dr. Gatto then dictated the letter, the transcript of which appears in the record. *Id*. at 543-44. This same transcript of the letter appears again as a duplicate elsewhere in the record. *See AR* 690-91. Thus, Dr. Gatto's opinion was before the ALJ and is properly before the court. The question then is whether the ALJ erred in failing to consider, and explicitly reject, Dr. Gatto's opinion.

Although there is no specific mention of Dr. Gatto in the ALJ's opinion, the ALJ does state that he "took into consideration the numerous statements by examining and treating doctors that the claimant's reports about her symptoms exceed the clinical and objective findings." *Id*. at 1097. Further, the ALJ goes on to say that "[n]o treating or examining source opined that the claimant

was precluded from work activity or limited in any way not consistent with the residual functional capacity determined in this decision." *Id*. This is true of Dr. Gatto's opinion. While Dr. Gatto opined that Plaintiff's C1-C7 impairment seems to be severe and permanent, he did not opine as to Plaintiff's limitations or ability to work. Because Dr. Gatto did not offer opinions regarding Plaintiff's limitations or ability to work, the ALJ was not required "to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010); *see also Sticka v. Saul*, No. CV 18-120-BLG-TJC, 2019 WL 4745066, at *11 (D. Mont. Sept. 30, 2019) ("[Doctors] did not offer opinions regarding Plaintiff's limitations or ability to work. Therefore, their treatment notes are not medical opinions the ALJ must weigh."). Indeed, relying on the Plaintiff's medical records, including those of her treating sources and the agency consultative examiners, and specifically the MRI from 2014, the ALJ explicitly accounted for "the severity of [Plaintiff's] neck and back impairment" in formulating an RFC with a "limitation to light work." *AR* 1096.

Furthermore, while Plaintiff points to the letter and some of Dr. Gatto's treatment notes, she fails to identify what portions of those records conflict with the RFC for light work. Dr. Gatto reviewed Plaintiff's 2013 MRI and rejected Plaintiff's request that he "order a flexion, extension film of her C-spine," telling Plaintiff that it "was not a prudent measure." *Id*. at 526. Later in 2013, Dr. Gatto noted that Plaintiff, after having been seen by a neurosurgeon and chiropractor, and after consulting a non-examining homeopathic physician, requested he order an upright MRI. *Id*. at 535. However, Dr. Gatto advised Plaintiff that "at this point in time, [he was] uncomfortable authorizing further diagnostic studies or documenting her disability." *Id*. In short, there is no opinion in the record from Dr. Gatto, including the contents of the letter, that appear to be rejected by the ALJ. In fact, the RFC appears consistent with Dr. Gatto's treatment notes and his opinion that Plaintiff's impairment was permanent. As explained by the ALJ:

> In sum, the above residual functional capacity assessment is supported because, first, there is sufficient objective and clinical evidence supported by medically acceptable clinical and laboratory diagnostic techniques to establish the severity of the claimant's impairments that reasonably could be expected to produce the claimant's pain or other symptoms. The MRI scan, the doctor's treatment notes, the

6

> mental health evaluations, and the consultative and other evaluations establish that there are severe impairments that reasonably could result in symptoms described by the claimant. Second, the intensity, persistence, and limiting effects of the claimant's symptoms as she described them were evaluated to determine the extent to which they limit her ability to do basic work activities.

*Id.* at 1097. Thus, the court finds that the ALJ did not error regarding Dr. Gatto's treatment notes, or opinion.

In this second issue, Plaintiff asserts that the ALJ failed to apply the "special technique" prescribed for the evaluation of mental illnesses. Pl.'s Mot. (dkt. 23) at 9-11. Plaintiff argues that the ALJ omitted "a mental health functional analysis" and that "the ALJ's finding [Plaintiff] has mild anxiety does not absolve him from the responsibility to address her mental limitations as they pertain to work." *Id*. at 11. Defendant counters that "Plaintiff's contention that the ALJ did not perform a 'mental residual functional analysis' is belied by a review of the ALJ's decision. The ALJ stated that he 'considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and the Listing of Impairments,' and he set forth a detailed analysis of each area (*AR* 1092-93)." Def.'s Mot. (dkt. 24) at 13.

At Step Two, the ALJ considered the four broad areas of mental functioning set forth in the regulations for evaluating mental disorders (20 C.F.R., Part 404, Subpart P, Appendix 1), known as the "paragraph B" criteria. *AR* 1092. Taking account of Plaintiff's medically determinable mental impairment of a generalized anxiety disorder, the ALJ found that Plaintiff had no limitations in the areas of; (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. *Id* at 1092-93. While the "Code of Federal Regulations requires an ALJ to consider all of the claimant's limitations when assessing her RFC, including any non-severe mental limitations," *Smith v. Colvin*, No. 14-CV-05082-HSG, 2015 WL 9023486, at *8 (N.D. Cal. Dec. 16, 2015), in this case there is no error where the ALJ found **no limitations**. *See e.g. Servia v. Comm'r of Soc. Sec.*, No. 2:15-CV-0510-CMK, 2016 WL 5404390, at *3 (E.D. Cal. Sept. 28, 2016) (finding no error in failing to include any mental limitations in the RFC, where "the ALJ did not specifically find plaintiff had any mild limitations related to his mental impairment."); *C.f., Hutton v. Astrue*, 491 F. App'x 850, 850–51 (9th Cir. 2012) (finding error where the ALJ failed to

consider mental impairment in the areas of concentration, persistence, or pace, after finding mild limitations).

Plaintiff also argues in her Reply that the ALJ erred in failing to include mental limitations in the hypothetical to the VE. However, because there were no limitations, "the ALJ was not required to include a mental limitation in the hypotheticals posed to the vocational expert." *Sisco v. Colvin*, No. 13-CV-01817-LHK, 2014 WL 2859187, at *8 (N.D. Cal. June 20, 2014).

To be clear, Plaintiff does not challenge the ALJ's finding at Step Two that her anxiety disorder was not severe. In making his determination, the ALJ specifically pointed to Plaintiff's mental health issues as identified in her clinical examination by Dr. Donahoo and by the state agency consultants, Drs. Brode and Wilson. *AR* 1094-95. Plaintiff makes no argument, or even suggestion, as to how her non-severe anxiety, which the ALJ found caused no limitations, could have altered the RFC. However, in undertaking this court's independent duty to review the ALJ's decision,[3] the court has found a reversable error at Step Two.

As stated in the relevant facts section above, Plaintiff received a psychological referral to Dr. Velleman in 2016, wherein Dr. Velleman opined that "[t]hough the GAD-7 indicated minimal sxs of anxiety; these sxs in addition to possible physical limitations caused by MVA have significantly impacted occupational and social functioning." *AR* 1020. Dr. Velleman made the same assessment 10 days later at a second session. *Id*. at 1033. Significantly, the ALJ cited directly to Dr. Velleman's notes and findings but made no mention of this aspect of his opinion. *Id*. at 1092. The ALJ specifically assigned great weight to the state agency consultants and to Dr. Cross's and Dr. Gapengieser's conclusions but says nothing of any weight assigned to Dr. Velleman. *Id*. This is important because the opinion of Dr. Gapengieser was from 2013, and the opinions of the state agency consultants and Dr. Cross were from 2014 and 2015 (*id*. at 116, 142, 153, 929). Dr. Velleman's later assessment specifically states that although the anxiety was mild, it did have a significant impact on Plaintiff's occupational and social functioning. This opinion is the exact opposite of the ALJ's findings that the anxiety produced no limitation. Without any

---

[3] *See Reddick*, 157 F.3d at 720 ("[W]e must review the administrative record as a whole, considering both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.").

explanation, the court is left to wonder whether the ALJ considered this opinion in making his determination of the four factors as outlined above. "Step two [] is a *de minimis* screening device [used] to dispose of groundless claims, [] and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Webb,* 433 F.3d at 687 (internal citations and quotations omitted). Because Dr. Velleman's 2016 opinion remained uncontradicted by contemporaneous or later medical evidence and was not addressed by the ALJ, the conclusion was not clearly established by medial evidence.

Further, this error may have then infected the RFC, where the ALJ only discussed the opinions of the agency consultants. On remand, the ALJ will consider and address the four factors in light of Dr. Vellerman's opinion at Step Two and then address and resulting effect to the RFC.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (dkt. 23) is **GRANTED**, and Defendant's motion for summary judgment (dkt. 24) is **DENIED**. The case is **REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: March 16, 2020

ROBERT M. ILLMAN
United States Magistrate Judge